**The People of the State of Colorado v. John Edward Quinn**

No. 26908

**The People of the State of Colorado v. R. W. (Wayne) Reagan**

(549 P.2d 1332)

Decided May 10, 1976.                    Modification denied June 1, 1976.

Doyle T. Johns, Jr., District Attorney, David L. Roberts, Deputy, for appellants.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Laurin A. Garner, Deputy, for appellees.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, David K. Rees, Assistant, for intervenors.


*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.


Defendants Quinn and Reagan were individually charged with fraud by check in the same district court, in violation of Colo. Sess. Laws 1972, ch. 48, 40-5-205 at 281, *amending* C.R.S. 1963, 40-5-205.[1] Following hearings upon defendants' motions to dismiss in each case before different judges, the statute was held to be unconstitutional; and the motions were granted. The People appeal. The cases were consolidated here, and we affirm.

The crime of fraud by check is described as follows:
"Any person who deceitfully issues a check which is not paid because the drawer has insufficient funds with the drawee issues a fraudulent check and commits fraud by check." Section 18-5-205(2), C.R.S. 1973.

Insufficient funds is defined as follows:
"A drawer has insufficient funds with the drawee to pay a check when the drawer has no checking account with the drawee, or has funds in a checking account with the drawee in an amount less than the amount of the check plus the amount of all other checks outstanding at the time of issuance; and a check dishonored for 'no account' shall also be deemed to be dishonored for 'insufficient funds'." Section 18-5-205(1)(e), C.R.S. 1973.

The culpable mental state (*i.e.*, acting deceitfully), which must be proved in order to sustain a conviction for fraud by check, is defined as follows:
"A person deceitfully issues a check when, at the time he issues it, he has the intent to defraud or deceive any other person and thereby obtains from any other person money, property, or other thing of value." Section 18-5-205(1)(b), C.R.S. 1973.

Defendants argue here that the statute fails to make clear whether the crime is complete at the moment of the issuance of the check, or only after the check has been presented for payment and payment refused. Further, they argue that the statute fails to make clear whether the state of the account at the time of issuance or at the time the check is presented for payment is critical. This alleged failure violates due process because of

---

[1]Now Section 18-5-205, C.R.S. 1973, which citation is used for the remainder of the opinion.

vagueness, they argue, in that a person is unable to determine at what point in time his conduct becomes unlawful and what conduct in fact is unlawful.

The second major contention of the defendants is that the statute places discretion in third parties in determining criminal liability in violation of the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. They argue that although two persons could perform the same identical act with the same culpable mental state, one whose check was paid by the bank would not be guilty of the crime, while the one whose check was dishonored would be guilty, determined only by the election of the drawee. If the check was paid by the drawee bank, a person who deceitfully issued an insufficient funds check could not be convicted of a crime.

I.

We first address the issue of vagueness. In *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972), this court ruled that C.R.S. 1963, 40-14-20(1)(h) was vague, ambiguous, and unintelligible. It based its decision on the fact that the statute defined "insufficient funds" to mean "that the drawer has no legal right to require the drawee to pay the check in accordance with the ordinary course of banking business." The court found two flaws in this definition. First, it found "legal right" to be ambiguous. Second, it found that the statute did not specify what was meant by "the ordinary course of banking business." The court went on to specifically approve, albeit in dicta, the following definition of "insufficient funds" taken from a previously vetoed legislative act:

" 'A drawer has insufficient funds with a drawee to cover a check when he has no funds or account whatever, or funds in an amount less than that of the check; and a check dishonored for "no account" shall also be deemed to have been dishonored for "insufficient funds".' " *People v. Vinnola, supra.*

This court then stated that the above definition "spells out an understandable meaning of 'insufficient funds'." The legislature subsequently adopted the current definition of "insufficient funds." A comparison of the definition currently before us with the one so previously approved by this court discloses that the present version is substantively the same as the one previously approved.

The traditional test for vagueness is whether a statute gives fair warning of forbidden conduct so that men of common intelligence can understand the statute's meaning and application. *See Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The statute at bar meets that test. Although we recognize that the proof may be difficult, we find no fatal ambiguity in the statute in this respect.

## II.

▆ Although the statute does not fall because of vagueness, it is constitutionally infirm on the other ground presented. Under the statute, no criminal liability attaches unless the check is not paid because of insufficient funds. The defendant asserts that this third party discretion makes the statute unconstitutional. We regard *People v. Vinnola, supra*, as dispositive of this question. It was there declared that the bad check law reviewed was unconstitutional on precisely this ground of third party discretion. The statute reviewed there provided that a third party (the drawee bank) could determine criminal liability by either dishonoring or paying the check. The statute declared unconstitutional there defined the crime as follows:

"A person is guilty of issuing a bad check when:

"He utters a check knowing or having reasonable cause to know at the time of uttering it that it will not be paid, and *it is not paid because of insufficient funds*;" (emphasis supplied)

The ". . . which is not paid . . ." language in the fraud by check statute before us is virtually the same, thus providing a third party drawee bank discretion to determine criminal liability. The bank's failure to honor the check is a material element of the crime of fraud by check.

The holding in *People v. Vinnola, supra*, was:

"In addition, under the various provisions of [the statute], the action of a third party, the bank, can often be the factor which determines whether guilt attaches. If two customers each write a check knowing it will not be paid on presentment due to insufficiency of funds in their respective accounts, each should be theoretically guilty of a crime. Yet, the bank upon which the check is drawn has the discretion to dishonor one and pay the other. Such a discretion is at odds with constitutional due process and equal protection of the laws. Criminal liability and punishments should not be predicated upon a third party's unfettered discretion."

The current statute contains the same infirmity in this particular as the statute in *Vinnola*. In that case, announced March 13, 1972, we attempted to suggest the elements of a constitutional statute, but the statute involved here, approved on May 10, 1972, apparently was drawn exclusive of any cognizance of *Vinnola*.

In passing, we have noted section 18-5-512, C.R.S. 1973, which does not contain the constitutionally infirm language here under consideration.

Judgment affirmed.